**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

HEWLETT PACKARD ENTERPRISE
COMPANY,

                                     Plaintiff,

                     -against-

AQUA SYSTEMS, INC., *et al*,

                                 Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

                                             **MEMORANDUM ORDER**
                                             23-CV-05640 (RPK) (JMW)

**A P P E A R A N C E S :**

Louis P. Feuchatbaum, Esq.
Michael Hewitt, Jr., Esq.
**Sideman & Bancroft LLP**
One Embarcadero Center, 22nd Floor
San Francisco, CA 94111
*Attorneys for Plaintiff*

Aaron H. Stanton, Esq.
Frederic Mendelsohn, Esq.
Joshua J. Cauhorn, Esq.
**Burke Warren MacKay & Serritella, P.C.**
330 N. Wabash Avenue, Ste 21st Floor
Chicago, IL 60611
*Attorneys for Defendants Aqua Systems, Inc. and Murtuza Tofafarosh*

Alexander D. Tripp, Esq.
**Law Firm of Alexander D. Tripp, PC**
928 Broadway, Suite 1000
New York, NY 10010
*Attorney for Defendants Aqua Systems, Inc. and Murtuza Tofafarosh*

*No appearance for Does 1 through 20*

**WICKS,** Magistrate Judge:

       Plaintiff Hewlett Packard Enterprise Company ("HPE"), a global technology company,

commenced this action on July 26, 2023 against Defendants Aqua Systems, Inc. ("Aqua") and

Murtuza Tofafarosh ("Tofafarosh") (collectively "Defendants") alleging: (i) inducing breach of

contract, (ii) intentional interference with prospective economic relations, (iii) fraud, (iv)

negligent misrepresentation,[1] (v) breach of contract, and (vi) conversion all arising from

Plaintiff's claims that Defendants engaged in a fraudulent scheme to obtain significant

discounts on HPE products.  (ECF No. 30 at ¶ 21.)

Presently before the Court is Defendants' motion to stay discovery pending the

outcome of its motion to dismiss Plaintiff's First Amended Complaint ("FAC") (ECF No. 34),

which is opposed by Plaintiff (ECF No. 37).  For the reasons that follow, Defendants' motion to

stay (ECF No. 34) is granted.

## FACTUAL BACKGROUND

At bottom, Plaintiff asserts that it sustained financial harm from July 2015 until at least

November 2018, caused by reason of Defendants (1) engaging in a scheme in which

Defendants obtained heavily discounted products from Plaintiff as a result of "having made

material misrepresentations regarding where and to whom the products would be sold," and (2)

causing certain resellers to "breach their contractual obligations" to Plaintiff.  (ECF No. 30 at ¶

1.)

**The Parties**

HPE is a company that specializes in "developing and manufacturing personal

computers and printers, as well as enterprise hardware products and services, including support

services and enterprise software." (*Id.* at ¶ 9.)  More specifically, Plaintiff develops

---

[1] Plaintiff admits in its oppositions to the motion to stay and to dismiss (ECF Nos. 37 and 43) that it
mistakenly included the negligent misrepresentation claim and has agreed to withdraw the claim without
prejudice.  For these reasons, the undersigned does not consider the parties' arguments as to that claim in
deciding the instant motion.

2

"intelligent solutions that allow customers to capture, analyze and act upon data seamlessly from edge to cloud."  (*Id.* at ¶ 12.)

Plaintiff uses a "channel distribution model" to sell its products through distributors to end customers.  (*Id.* at ¶ 14.)  Distributors purchase products directly from HPE then stock them in regional warehouses before reselling.  (*Id.*)  Distributors enter into strict contracts with HPE which require the distributors to sell HPE products "only to certain designated entities, such as Partners, or to independent resellers who agree to resell the HPE products to end users only in certain geographies."  (*Id.*)

HPE also enters into agreements with "Partners" which require the Partners to only purchase HPE products from authorized distributors, and to sell HPE products only to end customers and not resellers.  (*Id.*)  A Partner purchases HPE products from distributors at a discounted pricing rate.  (*Id.* at ¶ 15.)

CareTek Information Technology Solutions ("CareTek") has been an HPE Partner since October 2005.  (*Id.* at ¶ 20.)  As an HPE Partner, CareTek enjoys discounted and promotional pricing, including non-standard discount programs such as the "Big Deal Program."  (*Id.* at ¶ 15-17.)  Bikram Bajwa ("Bajwa") is the owner of CareTek, whom Plaintiff alleges engaged in a fraud scheme with Aqua to obtain products at significant discounts through HPE's "Big Deal Program."  (*Id.* at ¶ 21.)

Aqua is a corporation that resells HPE products purchased from CareTek.  (*Id.* at ¶¶ 3, 23.)  Tofafarosh is the Purchasing Manager for Aqua.  (*Id.* at ¶ 4.)  Plaintiff alleges that Aqua "understood the contractual obligations that HPE Resellers and distributors owed to HPE, and it understood that HPE was an intended beneficiary of contracts that Resellers and distributors, such as CareTek and Micro Ingram, entered into with third parties for the sale of HPE

products." (*Id.* at ¶ 23.)

Ingram Micro ("Ingram") is an authorized HPE Distributor who Aqua also purchased HPE products from. (*Id.* at ¶ 54.) And finally, Sentry Investments ("Sentry") is a customer of CareTek who was authorized to obtain HPE products at the higher discounted pricing. (*Id.* at ¶ 21.)

### The "Big Deal Program" and Additional Discount Programs

HPE Partners may request additional, special discounts other than the standard discount "when the Partner demonstrates that a sufficient business case exists to justify it *and* the sale is to a particular bona fide end user." (*Id.* at ¶¶ 15, 16) (emphasis added). This special discount program is known as the "Big Deal Program." If an end user is able to obtain products at the higher discount price through this program, the user is prohibited from reselling those products to others. (*Id.*)

To avoid and deter schemes that exploit the "Big Deal Program," HPE developed certain policies and internal controls. (*Id.* at ¶ 16.) These policies "test the veracity of claims that are made in applications for non-standard discounts, develop criteria to determine which deals involve a higher level of risk and require greater scrutiny, and train[] employees to protect against fraudulent schemes designed to exploit the Big Deal Program." (*Id.*)

In addition to "Big Deal" discounts, there are also promotions available for products designated for a "specific region or country based upon a unique marketing need." (*Id.* at ¶ 18.) The purpose of such discounts is to allow HPE to sell into a market where those users ordinarily would not be able to purchase its products at standard prices. (*Id.* at ¶ 19.) If products are discounted based on the end user's location, they are not allowed to be sold elsewhere. (*Id.* at ¶ 18.) The terms and conditions of these sales are communicated by HPE to

its Partners and Distributors.  (*Id.*)

**The CareTek Scheme**

Plaintiff alleges that from about July 2015 to May 2016, Defendants "conspired with Bajwa in a fraud scheme to obtain significant discounts through exploiting the Big Deal Program." (*Id.* at ¶ 21.)  Plaintiff alleges that the "CareTek Scheme" began when Tofafarosh called Bajwa and advised that he wanted to purchase HPE switches from CareTek so long as CareTek was able to obtain special pricing through the "Big Deal Program." (*Id.* at ¶ 23.) Plaintiff further alleges that Tofafarosh "coached" Bajwa on how they could "falsely claim that special discounts were needed by one of CareTek's existing customers [Sentry] who normally purchased a large amount of HPE products." (*Id.*)  Tofafarosh allegedly guided Bajwa on "how to submit false Big Deal Program registrations" and even told Bajwa not to "worry about getting caught because HPE did not track such sales and HPE did not care what happened with such discounted products after they were sold." (*Id.*)

Once HPE discovered the alleged scheme, Bajwa admitted to HPE his involvement in the fraud conspiracy scheme and described the solicitation and coaching by Tofafarosh. (*Id.* at ¶¶ 24-26.)  According to Bajwa, Defendants would have CareTek purchase HPE products at a discount through the "Big Deal Program" claiming they were for Sentry, but instead sold them to Defendants, who then resold the products to "unauthorized end users." (*Id.* at ¶¶ 24-26.)

In June 2016, when HPE conducted an investigation, HPE uncovered that "of the 713 discounted products obtained through those three Big Deals, only 46 products were actually sold by CareTek to Sentry," while the remaining 667 products were diverted to Defendants and resold. (*Id.*)  Plaintiff asserts that CareTek's "knowing misrepresentations – orchestrated by Defendants – that the product was going to Sentry" allowed CareTek to fraudulently obtain

discounts of approximately $875,000.  (*Id.* at ¶¶ 21,28.).

As support for the allegation that Aqua and Bajwa conspired to fraudulently obtain HPE products at discounted pricing, Plaintiff references certain emails between Bajwa and HPE detailing the alleged fraud, such as: "On July 7, 2015, Bajwa emailed HPE representatives, stating: 'Harif (Damji, VP of IT, Sentry Investments) is looking for 20 switches, possible J9729A#ABA (smartbuy) or J9728A#AB (regular). He is [sic] got a budget that he can't go over. He can't spend over $28K for this project.'"  (*Id.* at ¶ 30.)  Further emails detailed by Plaintiff discuss targeted pricing for the "client," approving "further discount[s]," meeting customer budgets, placing orders, ensuring prices are "aligned with the same discount levels that Sentry got for the switches," and the client looking for other vendors if 50% off the list price is not provided.  (*Id.* at ¶¶ 31-35.)  Plaintiff further provided a copy of a specific email between Bajwa and HPE regarding purchasing additional products for Sentry, when these products were actually purchased for Aqua. (*Id.* at ¶¶ 36, 43, 48.)

While there are no communications detailed between Defendant Aqua and Bajwa, Plaintiff claims that most communications between Tofafarosh and Bajwa occurred by telephone.  (*Id.* at ¶ 22.).  Plaintiff alleges that the content of these telephone conversations included Tofafarosh informing Bajwa that CareTek should apply for "Big Deal" Discounts and the amount of discount that CareTek should seek.  (*Id.* at ¶¶ 29, 40, 45.)  As a result of these conversations, Bajwa allegedly sent Tofafarosh's requests for the discounted products to HPE, "falsely representing that the discounts were necessary for sales to Sentry."  (*Id.*)

This scheme according to Plaintiff, played out as follows:

## Ingram Scheme

Defendants purportedly participated in a second scheme to defraud Plaintiff. Plaintiff alleges that from March 2018 to November 2018 Defendants "exploited the sales contracts that it had entered into with Ingram Export, an HPE-authorized Distributor, by breaching its agreement to resell the products only in the countries to which the products were supposed to be exported." (*Id.* at ¶ 54.) Plaintiff claims to be a third-party beneficiary of the contract or "Reseller Application" between Ingram and Aqua. (*Id.* at ¶¶ 54-55.)

Plaintiff claims that Defendants "fraudulently obtained discounted products by falsely representing that those products would be exported to certain designated countries." (*Id.*). Plaintiff alleges, however, that the discounts were not available for these restricted areas. (*Id.* at ¶ 63.) Similar to the CareTek communications, Plaintiff alleges that Aqua usually communicated to Ingram via telephone, but sometimes communicated by email. (*Id.* at ¶ 57.)

Specifically, Plaintiff alleges that for purchase orders from October 11, 2018 and October 23, 2018, Aqua advised Ingram that it would be exporting products to Curacao but HPE discovered that the products were diverted to users in Minnesota and Germany. (*Id.* at ¶ 58.) Plaintiff attached copies of emails with handwritten notes indicating that the country that the products were to be shipped to was Curacao. (*Id.*) However, Plaintiff fails to provide any details of who wrote the handwritten note on the emails, or when the handwritten note was added to the email. Plaintiff provides additional emails for orders for products allegedly being



Tofafarosh from Aqua contacts Bajwa from CareTek (an HPE Partner) to purchase HPE products so long as they are discounted.

Bajwa purchases HPE products at a discounted rate, falsely claiming to HPE that the items would be sold to a larger customer named Sentry.



CareTek sells the HPE products to Defendants.

Defendants resell the products to unauthorized end users at a profit.



shipped to the Dominican Republic and St. Maarten, with a similar handwritten note, but again does not explain the handwritten note added to the printed email. (*Id.* at ¶¶ 59-60.) Lastly, Plaintiff alleges that Aqua purchased products that would be shipped to Puerto Rico, Brazil, Paraguay, Colombia, Panama, Ecuador, Jamaica, Aruba, and Trinidad and Tobago, however, these products were all found in areas where the discounts were not available. (*Id.* at ¶¶ 61-62.)

In sum, the alleged scheme is described below:



Defendants approach Ingram, an HPE Distributor.

Defendants falsely assure Ingram that it would be exporting HPE products to designated countries to obtain special discounts.

However, these products were diverted to users in unauthorized countries for a profit.

As a result of these fraudulent acts, Plaintiff filed the instant case in this Court.

## PROCEDURAL BACKGROUND

The parties entered into a tolling agreement in which they agreed that Plaintiff's rights would be preserved while it was able to fully evaluate its claims and discuss a potential resolution. (ECF No. 37 at 5.) However, they agreed to undergo discovery before they could resume settlement discussions. (*Id.*) A few months after the filing of the Complaint in July 2023, Defendants filed a letter motion requesting a pre-motion conference on their anticipated motion to dismiss (ECF No. 14). District Judge Rachel P. Kovner held a pre-motion conference on October 31, 2023, in which she allowed Plaintiff to file an amended complaint. (Electronic Order dated Oct. 31, 2023.) Once that was filed, Defendants were to indicate whether they intended to move to dismiss the newly FAC. (*Id.*) Plaintiff filed the FAC on November 30, 2023. (ECF No. 30.)

On December 8, 2023, Defendants filed a letter to the undersigned advising that they

intend to move to dismiss Plaintiff's FAC.  (ECF No. 32 at 2.)  The motion to dismiss was bundle filed on February 20, 2024.  (ECF Nos. 41-44.)

On January 31 2024, the instant motion to stay discovery pending a decision on Defendants' Rule 12(b)(6) Motion to Dismiss Plaintiff's FAC was fully filed before the undersigned. (ECF No. 34.)

**The Parties' Contentions for The Motion to Stay**

In their motion to stay, Defendants assert Plaintiff's FAC should be dismissed in its entirety because: (i) Plaintiff failed to plead fraud and conversion with specificity notwithstanding the requirement to do so; (ii) Plaintiff wrongfully seeks lost profits on its fraud claim; (iii) Plaintiff failed to plead that it has a "sufficient possessory interest in the goods it alleges it sold to CareTek and Ingram, how Defendants exercised 'dominion' over such goods that Aqua sold to end users, or, again, the 'who, when, and where' of the allegedly fraudulent conduct underpinning the conversion claim;" (iv) Plaintiff failed to plead that Defendants were aware of HPE's specific contract(s) or that Defendants intentionally induced Ingram to breach any contract with HPE; and (v) the "Reseller Application" is neither a binding contract, nor does it make any reference to HPE as a third-party beneficiary, therefore, HPE's breach of contract claim fails.  (ECF No. 34.)  Finally, Defendants maintain that Plaintiff's claims and Defendants' defenses will require "broad international discovery."  (ECF No. 34-1 at 17.) Further, there is no risk of unfair prejudice since HPE "sat on its claims for years."  (*Id.* at 18.)

In response, Plaintiff argues that Defendants cannot make a "strong showing" that HPE's claims are without merit.  (ECF No. 37 at 15.)  This is because, Plaintiff avers, the FAC does in fact provide ample detail of Defendants' specific acts to satisfy Rule 9(b)'s heightened pleading requirements on its fraud and conversion claims.  Specifically, Plaintiff argues that its

FAC "describes the scheme, the specific misrepresentations that Defendants made, how those misrepresentations were material to HPE's losses, Defendants' knowledge of the falsehoods and corrupt intent uttering those falsehoods." (*Id*. at 14.)  Plaintiff further contends that HPE has "alleged ample conduct by Aqua to support a finding that it exercised improper dominion over the HPE products" and that HPE has a right to possession over the products procured by CareTek. (*Id*. at 13.)  As for Defendants' argument about the "Reseller Application," Plaintiff argues that HPE need not be explicitly named in a contract to be a third-party beneficiary. (*Id*. at 14-15.)  Finally, Plaintiff argues that the breadth of discovery is "limited" and it would be prejudiced since memories fade and evidence may deteriorate.

## DISCUSSION

Defendants contend that all three factors favor a stay here, as: (i) Defendants make a strong showing that Plaintiff's claims are legally deficient and lack well-plead facts, (ii) Defendants anticipate that extensive discovery will be required in this case, including "the production of documents by and depositions of witnesses in several states and, at least, Canada" but potentially other countries, and (iii) there is no prejudice to Plaintiff for a "relatively short stay" in discovery when it waited more than seven years to file this suit. (ECF No. 34 at 6, 20.)

Plaintiff objects on the grounds that (i) Defendants have "failed to demonstrate that none of HPE's claims will survive a Rule 12(b) motion, and (ii) absent discovery, the parties will only be further delayed from coming to a common understanding of what actually occurred. (ECF No. 37 at 17.)  Plaintiff contends that the case was only initially delayed by HPE's investigation and settlement efforts, but further delay would greatly prejudice HPE. (*Id*.)  Lastly, Plaintiff argues that the anticipated discovery will not be extensive or burdensome

10

as Defendants contend.  (*Id.*)

A.  <u>**The Legal Context for a Stay Pending Resolution of a Motion to Dismiss**</u>

"'[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants.'"  *Thomas v. N.Y. City Dep't of Educ.*, No. 09-CV-5167, 2010 WL 3709923, at *2 (E.D.N.Y. Sept. 14, 2010) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)).  The filing of a dispositive motion in and of itself does not halt discovery obligations.  That is, a stay of discovery is not warranted, without more, by the mere pendency of a dispositive motion.  *Weitzner v. Sciton, Inc.*, No.CV 2005-2533, 2006 WL 3827422, at *1 (E.D.N.Y. Dec. 27, 2006).  Rather, the moving party must make a showing of "good cause" to warrant a stay of discovery.  *Chesney v. Valley Stream Union Free Sch. Dist. No. 24*, 236 F.R.D. 113, 115 (E.D.N.Y. 2006).  In evaluating whether a stay of discovery pending resolution of a motion to dismiss is appropriate, courts typically consider: "(1) whether the Defendants have made a strong showing that the plaintiff's claim is unmeritorious; (2) the breadth of discovery and the burden of responding to it; and (3) the risk of unfair prejudice to the party opposing the stay." *Id.* (citation omitted).  "Courts also may take into consideration the nature and complexity of the action, whether some or all of the Defendants have joined in the request for a stay, and the posture or stage of the litigation." *Id.* (citation omitted).

"Upon a showing of good cause[,] a district court has considerable discretion to stay discovery pursuant to Rule 26(c)."  *Al Thani v. Hanke*, No. 20-CV-4765 (JPC), 2021 WL 23312, at *1 (S.D.N.Y. Jan. 4, 2021) (alteration in original) (quoting *Republic of Turkey v. Christies, Inc.*, 316 F. Supp. 3d 675, 677 (S.D.N.Y. 2018)). In assessing good cause, Courts look to "the particular circumstances and posture of each case." *Ellington Credit Fund, Ltd. v. Select*

11

*Portfolio Servs., Inc.*, No. 08-cv-2437 (RJS), 2008 WL 11510668, at *2 (S.D.N.Y. June 12, 2008) (quoting *Hachette Distrib., Inc. v. Hudson Cnty. News Co.*, 136 F.R.D. 356, 358 (E.D.N.Y. 1991) (Spatt, J.)).

### B. <u>Application of the Factors</u>

#### a. <u>Whether the Defendants Have Made a Strong Showing That the Plaintiff's Claim Is Unmeritorious</u>

*First*, the Court finds "good cause" for a stay in light of the arguments Defendants advanced on their Rule 12(b)(6) motion for the reasons set forth below.[2]

#### i. The Caretek Scheme: Fraud Claim (Count 3)

Defendants maintain that Plaintiff has not made out its fraud claim with the appropriate specificity under Fed. R. Civ. P. 9(b). (ECF No. 34-1 at 14.)  There are no allegations, Defendants say, that HPE and Aqua had a contract together; rather, there are only conclusory allegations that Defendants "coached" CareTek into obtaining the discounts at issue. (*Id.*)  Further, Defendants claim that there are no allegations stating that Aqua knew of the terms of the contracts between Plaintiff and CareTek. (*Id.* at 10.)  They also allege that Plaintiff cannot recover lost profits on a fraud claim. (*Id.* at 8.)  Specifically, Defendants state that Plaintiff has not alleged any out-of-pocket loss or that there were other eligible buyers that would have purchased the products. (ECF No. 34-1 at 11.)

To survive a motion to dismiss under Federal Rule of Civil Procedure 9(b)'s heightened pleading standard for fraud claims, a plaintiff like HPE must "(1) specify the statements that the plaintiff contends were fraudulent[;] (2) identify the speaker[;] (3) state where and when the statements were made[;] and (4) explain why the statements were fraudulent." *Rombach v.*

---

[2] The Court's consideration and analysis of the arguments set forth in Defendants' motion to dismiss Plaintiff's FAC under Fed. R. Civ. P. Rule 12(b)(6) is purely for purposes of weighing whether a stay should be granted.  This analysis should not be construed as the Court prejudging the merits or predicting the outcome of the motion to dismiss before District Judge Rachel P. Kovner in any way.

*Chang*, 355 F.3d 164, 171 (2d Cir. 2004) (citation omitted).

Under New York law, the elements of a common-law fraud claim are (1) a material misrepresentation or omission of fact; (2) made by defendant with knowledge of its falsity; (3) intent to defraud; (4) reasonable reliance on the part of the plaintiff; and (5) resulting damage to the plaintiff. *MetLife Invs. USA Ins. Co. v. Zeidman*, 734 F. Supp. 2d 304, 312 (E.D.N.Y. 2010) (citing *Crigger v. Fahnestock & Co., Inc*., 443 F.3d 230, 234 (2d Cir. 2006)).

As for damages for fraud under New York law, plaintiffs may recover what they have lost, not for what they would have gained: "Recoverable damages for fraud are 'out of pocket' damages, defined as damages that would compensate the successful party for the loss it actually sustained and place it in the same position it would have held had it not been defrauded." *Travelers Indem. Co. v. Paris Chaikin, PLLC,* No. 654048/15, 2016 N.Y. Misc. LEXIS 4404, at *14-15 (N.Y. Sup. Ct. Nov. 23, 2016); *see also Madison Park Dev. Assoc., LLC v. Febbraro,* No. 650613/2014, 2014 N.Y. Misc. LEXIS 4961, at *17 (N.Y. Sup. Ct. Nov. 7, 2014) (stating that out-of-pocket losses are available to a victim of fraud "to compensate plaintiffs for what they lost…not for what they might have gained").

The FAC details *Bajwa's* involvement in the CareTek scheme, namely that he would order the products on Aqua's behalf in order for it to obtain HPE discounts. (ECF No. 30 at ¶ 26.) Plaintiff also attaches a chart of the products and amounts allegedly stolen by Defendants. (ECF No. 30-1 at 1-25.) However, Plaintiff's FAC fails to establish its fraud claim for several reasons. *First,* noticeably absent from the FAC is *any* communication or specific statement made between Defendants and Plaintiff *or* Defendants and Bajwa detailing their misconduct. Instead, Plaintiff alleges any conversation involving Defendants occurred over the phone and

cannot point to specific statements made in furtherance of the fraud.[3]  (ECF No. 30 at ¶¶ 22, 36.)  *Second* and relatedly, Plaintiff uses the same boilerplate language fourteen (14) times, stating: "Aqua and Tofafarosh conspired with Bajwa to provide HPE with these false representations, consistent with their scheme to fraudulently exploit HPE's Big Deal Program."  (*Id.* at ¶¶ 30-31, 33-37, 41-42, 46, 48, 50-52.)  This statement lacks any detail as to Defendants' actual participation in the fraud.  Further, in its opposition to the motion to dismiss, Plaintiff concedes that certain information is made on "information and belief" but merely states that the substance is sufficiently pled because it is within Defendants' particular knowledge.  (ECF No. 43 at 16); *see Gov't Emples. Ins. Co. v. Landow,* No. 21-CV-1440 (NGG) (RER), 2022 U.S. Dist. LEXIS 57715, at *12 (E.D.N.Y. Mar. 29, 2022) ("Allegations may be based on information and belief when facts are particularly within the opposing party's knowledge, provided that they adduce specific facts supporting a strong inference of fraud.") (internal citations omitted).  This information is not within Defendants' knowledge alone—rather, Plaintiff could have contacted Bajwa for details on the statements conveyed to him involving the frauds.  *Third*, Plaintiff has not alleged Defendants' knowledge with respect to the contract between Plaintiff and CareTek.  Instead, Plaintiff merely states that Aqua "knew of HPE's relationship CareTek" and "was aware that HPE's relationships with its partners and distributors regulated the sale of HPE products" without providing further detail.  (ECF No. 30 at ¶ 80.)  Providing proof that Defendants knew of

---

[3] The undersigned acknowledges, however, that Plaintiff *may* be able to satisfy the justifiable reliance element for its fraud claim.  Plaintiff claims that it need not allege actual statements by Defendants as reliance can be established through statements made *indirectly* to Plaintiff.  (ECF No. 37 at 12.)  The court in *Pasternak v. Laboratory Corp. of Am. Holdings*, 59 N.E.3d 485, 491-92 (N.Y. 2016), explored whether third-party reliance could satisfy the reliance element for fraud.  The *Pasternak* court found that third-party reliance can only stand in a fraud claim where the defendant intends for the misstatement to reach the plaintiff and for plaintiff to rely on it.  *Id.* at 492.  Here, Defendants did intend for their alleged coached statements to reach Plaintiff for them to obtain the discount.  Therefore, Plaintiff may be able to establish justifiable reliance because it reasonably relied on the third party here, CareTek, when Bajwa stated that the products would be sold to Sentry, an authorized end user.

the relationship between them would be critical in establishing Defendants' intent to defraud.

*Finally,* Plaintiff's fraud claim also appears to be shy on alleging recoverable damages. Per the FAC, Plaintiff alleges that Aqua's "misrepresentations caused HPE to sell those products at a fraction of the price that HPE would have otherwise sold them" and that it was "deprived of the opportunity to sell those products at normal profit margins." (ECF No. 30 at ¶ 76.)  As a result of these misrepresentations, HPE suffered harm including lost revenue.  (*Id.* at ¶ 78.)  Indeed, it appears that Plaintiff concedes that it is seeking at least some damages related to lost opportunities, and states that its losses are not speculative but rather are well-defined. (ECF No. 37 at 10-11.)  However, these claims appear to go beyond the "out of pocket" rule because Plaintiff seeks lost profits which are not recoverable for a fraud claim in New York and are, by their very nature, speculative.  *See Marty Jaramillo, PT, PC v. Araque,* No. 111093/07, 2008 N.Y. Misc. LEXIS 8696, at *8 (N.Y. Sup. Ct. Apr. 14, 2008) ("[L]ost profits are not recoverable under a fraud theory…Under the out-of-pocket rule, there can be no recovery of profits which would have been realized in the absence of fraud."); *see also Yadan Zhang v. Trusted Insight,* No. 154570/2020, 2021 N.Y. Misc. LEXIS 9613, at *11 (N.Y. Sup. Ct. June 30, 2021) ("Lost business opportunities…are not recoverable as out-of-pocket losses."); *Lama Holding Co. v. Smith Barney Inc.,* 668 N.E.2d 1370, 1373 (N.Y. 1996) (stating that the loss of a bargain cannot be a basis for damages for a fraud claim since loss of the bargain is speculative).

Accordingly, for the reasons stated, Defendants appear to make plausible arguments attacking Plaintiff's fraud claim.

### ii. The Ingram Scheme: Inducing Breach of Contract (Count 1), Intentional Interference with Prospective Economic Relations (Count 2), and Third-Party Beneficiary Breach of Contract (Count 5)

#### 1. Inducing Breach of Contract and Intentional Interference (Counts 1 and 2)

Defendants maintain that Plaintiff does not specify any contractual obligations between them nor that Aqua was aware of the terms of a contract between Plaintiff and Ingram.  (ECF No. 34-1 at 12.)  Instead, Plaintiff only states in a conclusory manner that it was an intended third-party beneficiary to the Ingram sales with Aqua.  (*Id.*)  Further, Plaintiff fails to state with specificity Aqua's involvement in the alleged scheme in reselling the products to end users in other countries.  (*Id.*)

"[T]o establish a cause of action for inducing a breach of contract, the following essential elements are required: (1) the existence of a valid contract between the plaintiff and the other contracting party; (2) defendant's knowledge of that contract; (3) the defendant's intentional and improper procurement of the breach of that contract; and (4) damages."  *Forty Exch. Co. v. Cohen,* 479 N.Y.S.2d 628, 633 (N.Y. Civ. Ct. 1984).

The New York Court of Appeals has stated:

> [W]here there is an existing, enforceable contract and a defendant's deliberate interference results in a breach of that contract, a plaintiff may recover damages for tortious interference with contractual relations even if the defendant was engaged in lawful behavior. Where there has been no breach of an existing contract, but only interference with prospective contract rights, however, plaintiff must show more culpable conduct on the part of the defendant.

*NBT Bancorp Inc. v. Fleet/Norstar Financial Group, Inc.,* 664 N.E.2d 492 (N.Y. 1996).

But to state a claim for tortious interference where no contract exists, "(1) there is a business relationship between plaintiff and a third party; (2) the defendant, knowing of that relationship, intentionally interferes with it; (3) the defendant acts with the sole purpose of

harming the plaintiff, or, failing that level of malice, uses dishonest, unfair or improper means; and (4) the relationship is injured." *Goldhirsh Group v. Alpert,* 107 F.3d 105, 108-09 (2d Cir. 1997). *see also Hassan v. Deutsche Bank A.G.,* 515 F. Supp. 2d 426, 430 (S.D.N.Y. 2007) (stating that to establish a tort of intentional interference, plaintiff must establish that defendant engaged in conduct intended to inflict harm upon plaintiff).

Plaintiff alleges that Defendants obtained discounted products by misrepresenting that they would be exported to authorized countries, but, they went to countries that were ineligible for the discount.  (ECF No. 30 at 20.)  However, particularly fatal to Plaintiff's claim is its inability to demonstrate how Tofafarosh *knew* that the products were not going to the designated countries of Curacao, Dominican Republic or St. Maarten.  (*See id.* at ¶¶ 58-60.)  In the opposition to the motion to dismiss, Plaintiff also merely cites to cases and elements without pointing to much, if any, factual evidence, to support its inducing breach of contract or intentional inference claims. (ECF No. 43 at 19-22.)  Thus it is unclear how Defendants were aware of HPE's contracts with others to make out a claim for inducing breach of contract or tortious interference.

## 2.  Third Party Beneficiary (Count 5)

Similarly, Plaintiff has not alleged enough to demonstrate that there was a valid contract between it and Defendants to support its third-party beneficiary claim.  "[A] third party asserting rights as a third-party beneficiary must establish (1) the existence of a valid and binding contract between other parties, (2) that the contract was intended for the third party's benefit and (3) that the benefit to the third party is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate the third party if the benefit is lost," *Corter-Longwell v. Juliano,* 161 N.Y.S.3d 525, 528 (N.Y.

App. Div. 4th Dep't 2021).  An intended beneficiary exists where "the promisee intends to give the beneficiary the benefit of the promised performance." *Id.; see also Dormitory Auth. of the State of N.Y. v. Samson Constr. Co.,* 94 N.E.3d 456, 459 (2018) ("[A]n intent to benefit the third party must be shown, and absent such intent, the third party is merely an incidental beneficiary with no right to enforce the particular contracts.").

Here, there was no contract between HPE and Aqua, but Ingram was indeed "contractually bound" to HPE because Ingram was an authorized Distributor for HPE.  (ECF No. 30 at ¶14.)  Plaintiff points to a Reseller Application between Ingram and Aqua, but that document does not implicate HPE or provide any benefit to HPE.  (*See* ECF No. 30-1 at 27-31.)  This is insufficient to state its third-party beneficiary claim since Plaintiff has not pointed to the specific terms of the contract or an agreement demonstrating that it was the intended third party beneficiary to the contract.

### iii.  Both Schemes: Conversion (Count 6)

For the conversion claim concerning the CareTek scheme, Defendants assert that Plaintiff has not pled a sufficient possessory interest in the goods it sold or how it otherwise exercised dominion over the goods Aqua eventually sold to the end users.  (ECF No. 34-1 at 18.)  Further, because the conversion claim is premised on the same facts as the fraud claim, it must also be pled with the appropriate specificity, but Plaintiff has not done so.  (*Id.*)  Finally, Defendants state that they sold the products to CareTek and Ingram, divulging them of their rights.  (ECF No. 38 at 10.)  Plaintiff only states that there is ample evidence to support its conversion claim, namely that "[Aqua] exercised improper dominion over the HPE products…contrary to HPE's own right to possession of the HPE products in question, including the right to sell those products."  (ECF No. 37 at 13-14.)

"Under New York law conversion is the unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights." *In re Conte,* No. 22-CV-3109 (DG) (JMW), 2023 U.S. Dist. LEXIS 168777, at *39 (E.D.N.Y. July 3, 2023) (citing *Ancile Inv. Co. v. Archer Daniels Midland Co*., 784 F. Supp. 2d 296, 312 (S.D.N.Y. 2011)).  "To state a claim for conversion, a plaintiff must show: (1) legal ownership or an immediate superior right of possession to a specific identifiable thing and (2) that the defendant exercised an unauthorized dominion over the thing in question, to the alteration of its condition or to the exclusion of the plaintiff's rights." *Id.*

When an underlying act is alleged to be fraudulent, a claim of conversion must be pled with specificity under Fed. R. Civ. P. 9(b).  *See Silverman Ptnrs., L.P. v. First Bank*, 687 F. Supp. 2d 269, 288 (E.D.N.Y. 2010) ("[T]he heightened pleading standards of Rule 9(b) apply to torts that are premised on the defendant's alleged fraudulent actions. Thus, breach of fiduciary duty, conversion, and unjust enrichment must be pled with specificity when the underlying acts are allegedly fraudulent.").

However, as Plaintiff suggests here, the conversion claim is pled in the alternative of the fraud claim.  This is permitted under the Federal Rules: "A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient."  Fed. R. Civ. P. 8(d)(2).

Regardless of the pleading standard or Plaintiff's alternative pleading, Plaintiff's conversion claim is weak and Defendants' arguments against it bear some merit.  In the FAC, Plaintiff alleges that it had the right to possession of the subject HPE products, and that Aqua "wrongfully exercised dominion over the HPE products alleged herein."  (ECF No. 30 at ¶¶ 90,

91.)  Plaintiff alleged that *Partners*, like CareTek, agree to only sell to authorized distributors or resellers.  (*Id.* at ¶ 14.)  However, Plaintiff fails to state that it retained any rights when it sold the products to CareTek or Ingram.  It cannot point to either a possessory or a contractual right in the products that Defendants received.

Having found that, on its face, Plaintiff fails to make out its claims under either the CareTek or Ingram scheme, the Court finds the first factor weighing in favor of a stay.  *See Alapaha View Ltd. v. Prodigy Network, LLC,* No. 20-CV-7572 (VSB), 2021 U.S. Dist. LEXIS 89789, at *4 (S.D.N.Y. May 10, 2021) (finding stay warranted because the motion to dismiss may result in complete dismissal of the suit and did not appear to be "unfounded in the law").

**b.  Breadth of Discovery and The Burden of Responding**

Defendants maintain that investigating Plaintiff's claims will require extensive discovery, especially given that witnesses are located in various states and possibly other countries.  (ECF No. 34-1 at 8.)  Conversely, Plaintiff contends that discovery is not broad, rather the case includes transactions with only two entities, and a well-defined set of dates, parties, and primary witnesses.

The breadth of discovery here, as presented by Defendant, favors a stay because the parties could avoid substantial burden and waste of resources by staying discovery until the motion to dismiss has been decided.  Given that the alleged scheme dates as far back as 2015 and that the witnesses span various states and countries (ECF No. 43 at 13-14), it would be especially prudent to reserve any discovery until after the motion to dismiss is decided. *O'Sullivan v. Deutsche Bank AG*, No. 17-cv-8709 (LTS) (GWG), 2018 U.S. Dist. LEXIS 70418, at *26-27 (S.D.N.Y. Apr. 26, 2018) (finding breadth of discovery would cause a burden on defendants since case involved multiple defendants, and involved thousands of transactions

20

that occurred decades ago); *see also Miller v. Brightstar Asia, Ltd.,* No. 20-CV-4849 (GBD) (JLC), 2020 U.S. Dist. LEXIS 239539, at *13 (S.D.N.Y. Dec. 21, 2020) (imposing stay where discovery would involve "various non-parties" and foreign discovery may be vital). Accordingly, the second factor favors a stay.

### c.  The Risk of Unfair Prejudice to The Party Opposing the Stay

Defendants contend that Plaintiff sat on its claim for years.  In opposition, Plaintiff argues that it would be prejudiced since such a significant amount of time has already lapsed since the factual issues occurred, witnesses' memories fade, and documents are hard to gather after large amounts of time.  Plaintiff argues that the parties entered into a tolling agreement, which prohibits arguing any delay occurred between 2020 and 2023.

This circumstances here are similar to *O'Sullivan*, where the Court found that "the passage of a reasonable amount of time" alone "cannot itself constitute prejudice sufficient to defeat a motion to stay discovery."  *O'Sullivan*, 2018 U.S. Dist. LEXIS 70418 at *30.  In addition, the plaintiff's argument that documents may be destroyed was found to be a "usual litigation risk[] that affect[s] all the parties equally." *Id.* at *31.  The court ultimately granted the defendants' motion to stay in light of the potential burden that can arise from undergoing discovery as well as defendants' strong showing that the pending motion to dismiss may be granted. *Id.*

The Court does not find that a stay would result in any material prejudice to Plaintiff. The Court also notes this case is still in its early stages – an Initial Conference has not taken place and a discovery schedule has not been set.  Presumably "litigation holds" are well in place as to the parties and even relevant non-parties to preserve evidence. *See, e.g., In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.,* 341 F.R.D. 474, 492-93

(S.D.N.Y. 2022) (reviewing obligations triggering litigation holds in context of spoliation motion). Moreover, Defendants' Rule 12(b)(6) Motion to Dismiss has already been filed along with Plaintiff's opposition to the same and Defendants' reply. This suggests that any stay of discovery will be relatively short. Like *O'Sullivan,* the passage of time here is not a good reason to stay discovery despite the fact that memories may fade and documents may be hard to cull together. And, any delays in the case thus far have resulted from Plaintiff's own decision to wait years to commence this action when it was equipped with the information since at least April 2016. Thus, it cannot be said that a short stay of discovery for a few months pending the decision of an already fully briefed motion to dismiss will result in a prejudice to Plaintiff. Accordingly, weighing all the relevant factors, the Court finds that a stay of discovery pending the outcome of Defendants' Rule 12(b)(6) motion is warranted.

## **CONCLUSION**

Based on the foregoing reasons, good cause exists warranting the issuance of a stay of discovery pending the outcome of Defendants' Rule 12(b)(6) motion. Accordingly, Defendants' motion to stay discovery (ECF No. 34) is **GRANTED**.

Dated: Central Islip, New York
        March 18, 2024

                    S O   O R D E R E D:

                    /s/ *James M. Wicks*
                    JAMES M. WICKS
                    United States Magistrate Judge