UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------x

HEWLETT PACKARD ENTERPRISE
COMPANY,

         Plaintiff,

       v.

AQUA SYSTEMS, INC.; MURTUZA
TOFAFAROSH; and DOES 1 THROUGH
20,

         Defendants.

------------------------------------------------------x

**MEMORANDUM AND ORDER**
23-CV-5640 (RPK)

RACHEL P. KOVNER, United States District Judge:

Plaintiff Hewlett Packard Enterprise Company brings this action against defendants Aqua Systems, Inc., Murtuza Tofafarosh, and 20 John Does in connection with an alleged fraudulent scheme to purchase plaintiff's products at substantial discounts. Defendants have moved to dismiss plaintiff's amended complaint under Federal Rule of Civil Procedure 12(b)(6). For the reasons explained below, the motion to dismiss is granted.

## BACKGROUND

The following facts are from the amended complaint and are assumed true for the purposes of this motion.

Plaintiff is a technology company that manufactures enterprise computer hardware. Am. Compl. ¶¶ 9, 12–13 (Dkt. #30). Plaintiff sells its products to authorized distributors under contracts that restrict any subsequent sale to certain authorized "partners" and independent resellers. *Id.* ¶ 14. Partners are contractually bound to purchase plaintiff's products only from authorized distributors and to sell those products only to end users. *Ibid.* Partners purchase

1

plaintiff's products at a standard discount but may apply to plaintiff for higher discounts in special cases under the "Big Deal Program." *Id.* ¶ 15–16. Plaintiff also offers temporary promotional discounts through its distributors and partners, some of which target specific geographic regions and prohibit re-sale outside the specified region. *Id.* ¶¶ 17–19. Plaintiff operates a fraud-detection system to identify efforts to exploit such discounts. *Id.* ¶ 16. Plaintiff alleges that "Aqua understood the contractual obligations" that plaintiff's distributors and partners owed to plaintiff, "[b]ased upon its experience reselling [plaintiff]-branded products." *Id.* ¶ 23; *accord id.* ¶ 54.

There are two alleged fraud schemes: the "CareTek Scheme" and the "Ingram Scheme."

## I.    CareTek Scheme

The CareTek Scheme began around July 2015 when Tofafarosh, on behalf of Aqua, called Bikram Bajwa, the owner of CareTek Information Technology Solutions, a plaintiff-authorized partner. *Id.* ¶ 23. Tofafarosh "expressed a desire to buy [plaintiff's] switches from CareTek, provided that CareTek could obtain special pricing." *Ibid.* "Tofafarosh coached Bajwa . . . [to] falsely claim that special discounts were needed by one of CareTek's existing customers who normally purchased a large amount of [plaintiff's] products." *Ibid.* From about July 2015 to May 2016, CareTek purchased just over 700 products under three Big Deal Program discounts purportedly for an existing customer, Sentry Investments; CareTek then sold 667 of those products, bearing approximately $875,000 in such discounts, to Aqua. *Id.* ¶¶ 21, 25, 28, 39, 44; *id.* Exs. A–C.

For each of those sales, plaintiff alleges that "Tofafarosh, acting on behalf of Aqua, provided Bajwa with the specific products, quantities, and price points he desired," that Tofafarosh would tell Bajwa "that CareTek should apply for Big Deal Program discounts for each product," and that Bajwa would subsequently request the same products from plaintiff while falsely

2

representing that the products were intended for Sentry and that Big Deal Program discounts were necessary for various reasons. *Id.* ¶¶ 27, 29–37, 40–42, 45–52. Plaintiff repeatedly alleges that Bajwa's representations were "consistent with Tofafarosh's coaching" and defendants' "scheme to fraudulently exploit [plaintiff]'s Big Deal Program." *Ibid.* Plaintiff's account manager Mark Janssen cited Bajwa's representations in approving the three Big Deal Program discounts. *See id.* ¶¶ 32, 38, 43.

Through its fraud detection system, plaintiff determined that several products sold to CareTek under one of the three Big Deal Program discounts were in the possession of a partner other than Sentry. *Id.* ¶¶ 24–25. In November 2020, after plaintiff's "personnel confronted Bajwa," he admitted that he "had been solicited" and "coached" by Tofafarosh to engage in the alleged fraudulent scheme. *Id.* ¶ 26.

## II.    Ingram Scheme

The Ingram Scheme began around June 2012 when Aqua's president, Shabbir Adib, submitted a signed Reseller Application and Due Diligence Form to Ingram Micro – Miami Export Division, a plaintiff-authorized distributor. *Id.* ¶¶ 54–55; *id.* Ex. D. The application stated that Aqua "would be exporting products acquired from Ingram . . . to Brazil, Paraguay, Columbia, Panama, Ecuador, and Jamaica." *Id.* ¶ 55. From March to November 2018, Aqua placed several orders for plaintiff's products through Ingram, *id.* ¶ 56, after falsely telling Ingram it would be exporting such products to Curaçao, *id.* ¶ 58; *id.* Exs. E–F, the Dominican Republic, *id.* ¶ 59; *id.* Exs. G–I, St. Maarten, *id.* ¶ 60; *id.* Ex. J, and Puerto Rico, *id.* ¶ 61; *id.* Ex. K. *See also id.* ¶ 62.

For each transaction, the purported export destination was recorded by Ingram "into its database," listed on an invoice, and noted in handwriting on printed copies of orders emailed by Tofafarosh to Ingram employees. *Id.* ¶¶ 58–62; *id.* Exs. E–K. Plaintiff alleges that these products

3

were not sold to end users in the specified geographic areas and that defendants knew that would be the case when they communicated with Ingram. *Id.* ¶¶ 58–62; *see also id.* ¶ 62. The promotional discounts applied to these products amount to "at least $1,527,000." *Id.* ¶ 63.

### III.    Procedural History

Plaintiff filed this action in July 2023. *See* Compl. (Dkt. #1).

Plaintiff filed an amended complaint after defendants gave notice of the grounds for their motion to dismiss the original complaint. *See* Ltr. Requesting Pre-Motion Conf. (Dkt. #14); Am. Compl.; Oct. 31, 2023 Minute Entry & Order. The amended complaint asserts six claims: (1) inducing breach of contract, against all defendants, Am. Compl. ¶¶ 64–67; (2) intentional interference with prospective economic relations, against all defendants, *id.* ¶¶ 68–72; (3) common-law fraud, against all defendants, *id.* ¶¶ 73–78; (4) negligent misrepresentation, against Aqua, *id.* ¶¶ 79–85; (5) breach of contract, against Aqua, *id.* ¶¶ 86–88; and (6) conversion, against all defendants, *id.* ¶¶ 89–92. Plaintiff seeks actual and exemplary damages, attorney fees and costs, and restitution. *Id.* at 35–36.

Defendants have moved to dismiss the amended complaint. *See* Mot. to Dismiss (Dkt. #41); Mem. in Supp. (Dkt. #42). They argue that plaintiff's fraud and negligent misrepresentation claims should be dismissed because they fail to allege damages cognizable under New York law, that plaintiff's negligent misrepresentation claim is also deficient because of a failure to allege a special relationship between plaintiff and defendants, and that all of plaintiff's claims are inadequately pleaded under Federal Rules of Civil Procedure 8 and 9(b). Mem. in Supp. 11–24; Reply (Dkt. #44). Plaintiff opposes dismissal of all claims except its negligent misrepresentation claim, which plaintiff states it "agree[s] to withdraw . . . without prejudice." Opp'n 11 n.4 (Dkt. #43).

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a defendant to move to dismiss a complaint for "failure to state a claim upon which relief can be granted." To avoid dismissal on that basis, a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ibid.* (discussing Fed. R. Civ. P. 8). The facial "plausibility standard is not akin to a probability requirement," but it requires a plaintiff to allege sufficient facts to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ibid.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556–57 (2007)) (quotation marks omitted). "A well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof [of the facts alleged] is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (quotation marks and citation omitted).

At the motion-to-dismiss stage, a court may consider only (i) the complaint itself, (ii) documents either attached to the complaint or incorporated in it by reference, (iii) documents the plaintiff relied on and knew of when bringing suit, and (iv) matters in the public record that are subject to judicial notice. *See, e.g.*, *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007); *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004); *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999). When reviewing the complaint on a motion to dismiss, the court must accept all facts alleged in a complaint as true, *Iqbal*, 556 U.S. at 678, and "draw[] all reasonable inferences in favor of the plaintiff," *Buon v. Spindler*, 65 F.4th 64, 76 (2d Cir. 2023) (citation omitted). The court, however, is not obligated to adopt "mere conclusory statements" or

5

"threadbare recitals of the elements of a cause of action" that are not "supported by factual allegations." *Id.* at 678–79.

Federal Rule of Civil Procedure 9(b) imposes heightened pleading requirements on claims sounding in fraud. That rule requires plaintiffs to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). To do so, a plaintiff must "(1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." *Harsco Corp. v. Segui*, 91 F.3d 337, 347 (2d Cir. 1996) (citations omitted); *see Nakahata v. N.Y.-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 197 (2d Cir. 2013); *see also Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 578–79, 583 (2d Cir. 2005). While scienter "may be alleged generally," Fed. R. Civ. P. 9(b), the plaintiff must "allege facts that give rise to a strong inference of fraudulent intent," *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006) (citation omitted). A "strong inference" may be pleaded "either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 187 (2d Cir. 2004) (internal citations omitted).

## DISCUSSION

Defendants' motion to dismiss is granted.

## I.   **Plaintiff Fails to Adequately Plead a Common-Law Fraud Claim.**

Plaintiff asserts a claim of fraud regarding the alleged CareTek Scheme. *See* Am. Compl. ¶¶ 73–78. But that count does not plausibly allege damages that are cognizable under New York law. *See* Opp'n 11 n.5 (acknowledging that New York law governs). Plaintiff's fraud claim is therefore dismissed.

6

To plead fraud under New York law, a plaintiff must allege "(1) a material misrepresentation or omission of fact (2) made by a defendant with knowledge of its falsity (3) and intent to defraud; (4) reasonable reliance on the part of the plaintiff; and (5) resulting damage to the plaintiff." *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 13 F.4th 247, 259 (2d Cir. 2021) (brackets and citation omitted); *see Pasternack v. Lab'y Corp. of Am. Holdings*, 59 N.E.3d 485, 491 (N.Y. 2016).

"In New York, damages in fraud cases are limited by the out-of-pocket rule, which provides that plaintiffs in fraud cases may only recover damages for what they lost because of the fraud, which does not include lost profits" or "lost gross revenue." *Kaplan Grp. Invs. LLC v. A.S.A.P. Logistics Ltd.*, 694 F. Supp. 3d 374, 390 (S.D.N.Y. 2023) (quotation marks and citation omitted). "Damages are to be calculated to compensate plaintiffs for what they lost because of the fraud, not to compensate them for what they might have gained," and "there can be no recovery of profits which would have been realized in the absence of fraud." *Lama Holding Co. v. Smith Barney Inc.*, 668 N.E.2d 1370, 1373–74 (N.Y. 1996) (quotation marks and citation omitted). Other "actual pecuniary losses" may be cognizable, but only if such losses are "the direct, immediate, and proximate result of the misrepresentation." *Pasternak v. Dow Kim*, 961 F. Supp. 2d 593, 596 (S.D.N.Y. 2013) (quoting *Kregos v. Associated Press*, 3 F.3d 656, 665 (2d Cir. 1993)). While "the loss of an alternative contractual bargain" might establish cognizable damages, such a loss cannot do so when it is "undeterminable and speculative." *Lama*, 668 N.E.2d at 1374 (citation omitted).

The amended complaint seeks damages for "lost revenue" in the form of discounts that plaintiff alleges it would not have granted but for defendants' fraud. *See* Opp'n 13–14 (citing Am. Compl. ¶¶ 28, 39, 44 and quoting *id.* ¶ 78). Whether plaintiff refers to the discounts as "lost revenue" or "lost profit," the result is the same under New York law—such damages are not

7

cognizable on a claim of fraud.  *See Kaplan*, 694 F. Supp. 3d at 390.  That is because plaintiff does not allege a determinable and non-speculative pecuniary loss stemming directly from those discounts.  *See Lama*, 668 N.E.2d at 1374.  The amended complaint does not assert or otherwise suggest that plaintiff sold the relevant products to CareTek below plaintiff's costs instead of simply for a lower profit than usual.

While plaintiff does not dispute that New York law generally prohibits the recovery of lost profits based on a fraud claim, plaintiff asserts that it plausibly alleges damages here because "a defrauded plaintiff may base a claim for actual pecuniary loss upon an economic opportunity that the defendant fraudulently caused him to forego."  Opp'n 12 (citation omitted).  But plaintiff has not plausibly alleged that it forwent any concrete opportunity by selling products to CareTek at a discount.  Unlike the complaints in the cases on which plaintiff relies, the amended complaint lacks any allegation of a specific alternative buyer with a higher offer that plaintiff passed up due to the alleged fraud.  *Compare Variblend Dual Dispensing Sys. LLC v. Crystal Int'l (Grp.) Inc.*, No. 18-CV-10758 (ER), 2021 WL 1198834, at *6 (S.D.N.Y. Mar. 30, 2021) (dismissing fraud claim because plaintiff had "not alleged sufficient facts to show that [the forgone] business opportunity actually existed at the time of his reliance on [the] alleged[] fraud[]," only that "such opportunities 'would have' existed"); *In re Optimal U.S. Litig.*, 837 F. Supp. 2d 244, 266–67 (S.D.N.Y. 2011) (dismissing fraud claim because plaintiff had "not alleged any out-of-pocket losses resulting from defendants' alleged fraud and negligent misrepresentation—but ha[d] only alleged speculative lost profits"), *with* Opp'n 12–13 (citing *Doehla v. Wathne Ltd.*, No. 98-CV-6087 (CSH), 2000 WL 987280, at *1, *6–9 (S.D.N.Y. July 17, 2000) ("[T]here is nothing remote about Plaintiff's foregoing [his then-existing employment] contract to accept Defendants' offer of employment; the first act immediately preceded the second and was necessary to it.")).

The amended complaint also seeks restitution.  But ordering the return of plaintiff's products or the forfeiture of Aqua's profit from the transactions under the label of "restitution," *see* Am. Compl. 36, would still contravene New York's out-of-pocket rule.  *See Kregos*, 3 F.3d at 665 ("New York law awards only 'out of pocket' expenses in fraud cases, entitling plaintiffs to damages solely for their actual *pecuniary losses*." (emphasis added)); *cf. King v. Wang*, No. 14-CV-7694 (LJL), 2021 WL 5403871, at *6 n.10 (S.D.N.Y. Nov. 17, 2021) (applying the out-of-pocket loss rule in federal RICO context and noting that the rule "focuses on injury to the plaintiff as a result of the relevant predicate acts . . . , not on recovery in restitution for unjust enrichment or to recoup gains by defendants").

Plaintiff next asserts that it has pleaded viable damages in the form of expenses in "conducting a series of audits and fraud analyses" and "confronting and interviewing Bajwa."  *See* Opp'n 14 (citing Am. Compl. ¶¶ 16, 24–26).  But these costs are the sort of "peripheral expenses" that the out-of-pocket rule excludes.  *Vaughn v. Consumer Home Mortg. Co.*, 470 F. Supp. 2d 248, 269 (E.D.N.Y. 2007) (citing *Pope v. Saget*, 817 N.Y.S.2d 1, 5 (App. Div. 2006)),  *aff'd*, 297 F. App'x 23 (2d Cir. 2008).  Plaintiff invokes the out-of-pocket rule's exception for certain consequential damages, but that exception applies only to damages incurred in reliance on the alleged fraud.  *See* Opp'n 14 (citing *Castle & Cooke, Inc. v. Lincoln Merch. Corp.*, 477 N.Y.S.2d 390, 390 (App. Div. 1984)); *Kregos*, 3 F.3d at 665; *see also Barrie House Coffee Co. v. Teampac, LLC*, No. 13-CV-8230 (VB), 2016 WL 3645199, at *11–12 (S.D.N.Y. June 30, 2016) (holding that various "expenditures [plaintiff] claims it made in reliance on [defendant]'s alleged misleading omissions" were cognizable, but not attorney fees because plaintiff "hired [the] attorney after the discovery of [the] alleged fraud").  None of the expenses listed by plaintiff, *see* Opp'n 14, can plausibly have been incurred in reliance on defendants' alleged fraud.  The amended

9

complaint suggests those costs were either incurred pursuant to plaintiff's general fraud-detection system, *see* Am. Compl. ¶¶ 16, 24, 25, or after the discovery of the fraud, *see id.* ¶¶ 25–26. And unlike a plaintiff's costs to purge defective inventory the plaintiff was fraudulently induced to purchase, *see* Opp'n 14 (citing *Kaplan*, 694 F. Supp. 3d at 391), the costs to investigate a suspected fraud cannot plausibly have been incurred in reliance on that same fraud, *see Linkers (Far E.) Pte., Ltd. v. Int'l Polymers, Inc.*, No. 94-CV-9226 (SS), 1996 WL 412854, at *4 & n.6 (S.D.N.Y. July 23, 1996) (holding that costs plaintiff incurred in effecting a fraudulently induced purchase of materials were cognizable damages, but not "litigation expenses" including "private investigator fees").

Plaintiff is also mistaken in arguing that dismissal for failing to plead cognizable damages is improper at the motion to dismiss stage. *See* Opp'n 12, 14–15. The leading case from the New York Court of Appeals on the out-of-pocket rule affirmed a motion to dismiss for failure to state a claim. *See Lama*, 668 N.E.2d at 1371; *see also, e.g.*, *Connaughton v. Chipotle Mexican Grill, Inc.*, 75 N.E.3d 1159, 1163–64 (N.Y. 2017); *Barrett v. Huff*, 776 N.Y.S.2d 678, 681 (App. Div. 2004). And federal courts applying New York law routinely dismiss common-law fraud claims that, like plaintiff's, fail to plausibly allege damages cognizable under the out-of-pocket rule. *See, e.g.*, *Power Auth. of N.Y. ex rel. Solar Liberty Energy Sys., Inc. v. Advanced Energy Indus., Inc.*, No. 19-CV-1542 (LJV) (JJM), 2023 WL 2756968, at *4 (W.D.N.Y. Feb. 1, 2023), *report and recommendation adopted*, 2024 WL 957788 (W.D.N.Y. Mar. 6, 2024); *In re Optimal*, 837 F. Supp. 2d at 266–67.

Plaintiff's fraud claim thus fails to adequately plead damages that are cognizable under New York law.

**II.    None of the Three Claims Specific to the Ingram Scheme Are Adequately Pleaded.**

Plaintiff asserts three claims specific to the Ingram Scheme: inducing breach of contract, intentional interference with prospective economic relations, and breach of contract.  Am. Compl. ¶¶ 64–72, 86–88.  The former two claims fail to satisfy the heightened pleading requirements of Rule 9(b), and plaintiff's breach-of-contract claim fails even under Rule 8's plausibility standard. *See* Opp'n at 11 & n.3 (conceding that all claims are subject to Rule 9(b)).  All three claims are therefore dismissed.

### A. Plaintiff fails to adequately plead the fraudulent intent required for inducing breach of contract and interference with prospective economic relations.

Plaintiff's claims for inducing breach of contract and intentional interference with prospective economic relations between plaintiff and Ingram are dismissed under Rule 9(b).

To state a claim for inducing breach of contract, also known as tortious interference with contract, "a plaintiff must show '(1) the existence of a valid contract between plaintiff and a third party; (2) the defendant's knowledge of that contract; (3) the defendant's intentional procuring of the breach, and (4) damages.'"  *White Plains Coat & Apron Co. v. Cintas Corp.*, 460 F.3d 281, 285 (2d Cir. 2006) (quoting *Foster v. Churchill*, 665 N.E.2d 153, 156 (N.Y. 1996)).  To state a claim for tortious interference with prospective economic relations, a "plaintiff must allege that '(1) it had a business relationship with a third party; (2) the defendant knew of that relationship and intentionally interfered with it; (3) the defendant acted solely out of malice, or used dishonest, unfair, or improper means; and (4) the defendant's interference caused injury to the relationship.'" *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 400 (2d Cir. 2006).

The amended complaint fails to adequately plead that defendants acted with the requisite intent to either induce breach or interfere with prospective economic relations.  As to inducing breach of contract, plaintiff asserts that "Aqua was aware of [Ingram Export's] contractual

11

obligations to" plaintiff—specifically its contractual duty to distribute products only in certain regions—"[b]ased upon [its] experience reselling [plaintiff's] products." Am Compl. ¶ 54. But plaintiff fails to explain why defendants' experience as a downstream purchaser from various middlemen would imbue defendants with knowledge of Ingram Export's upstream obligations to HP. *See id.* ¶¶ 14–19 (detailing the distinctive contractual relationship between plaintiff and its Partners and Distributors). Defendants' communications misrepresenting the country to which purchased goods would be sent suggest, at most, that defendants "knew that [they] could not obtain . . . geography-based discounts if [they] reported the true location of the end users." *Id.* ¶ 54. They do not raise a plausible inference that defendants knew that the anticipated exports would constitute a breach of a contract between Ingram Export and plaintiff.

Similarly, plaintiff fails to plausibly allege that defendants intentionally interfered with a "prospective business relationship" between plaintiff and Ingram that "allowed [plaintiff] to sell discounted products to independent resellers" subject to geographic limitations. *Id.* ¶ 69. It seems dubious that plaintiff has adequately pleaded an actual "prospective business relationship" that suffered interference in this claim. In particular, plaintiff has not plausibly suggested that defendants' obtaining plaintiff-made goods from Ingram Export in any way impeded plaintiff or Ingram Export from making sales of discounted HP products in accordance with the companies' geographic restrictions. But even assuming that plaintiff adequately pleaded a prospective relationship that suffered interference, plaintiff fails to plausibly allege scienter. Just as the amended claim fails to plausibly allege defendants knew of Ingram's geographic obligations to plaintiff, the amended complaint also fails to adequately plead defendants' knowledge of prospective agreements between HP and Ingram with similar terms. And even if plaintiff had adequately pleaded such knowledge, plaintiff's scienter claims would fall short because the

12

amended complaint does not plausibly suggest that interference with plaintiff's contractual relationship with Ingram was defendants' "goal," rather than a "collateral effect" of that fraud.  *In re Refco Inc. Sec. Litig.*, 826 F. Supp. 2d 478, 521–22 (S.D.N.Y. 2011).

Both claims are therefore dismissed under Rule 9(b).

**B.  Plaintiff fails to adequately plead a third-party claim for breach of contract.**

Plaintiff's third-party beneficiary claim for breach of contracts between defendants and Ingram fails to satisfy even Rule 8's plausibility standard, and is therefore dismissed.

In New York, "the elements of a breach of contract claim are (1) the existence of an agreement; (2) adequate performance of the contract by the plaintiff; (3) breach of contract by the defendant; and (4) damages." *Swan Media Grp., Inc. v. Staub*, 841 F. Supp. 2d 804, 807 (S.D.N.Y. 2012).  "Generally, a party alleging a breach of contract must demonstrate the existence of a . . . contract reflecting the terms and conditions of their . . . purported agreement." *Mandarin Trading Ltd. v. Wildenstein*, 944 N.E.2d 1104, 1110 (N.Y. 2011) (quotation marks and citation omitted). Where, as here, a plaintiff asserts "a third-party beneficiary claim," the plaintiff must also adequately plead "that the contract was intended for [its] benefit[] and . . . that the benefit to [it] is sufficiently immediate . . . to indicate the assumption by the contracting parties of a duty to compensate [it] if the benefit is lost." *Ibid.* (alterations in original and citation omitted).

"Although a third party need not be specifically mentioned in the contact before third-party beneficiary status is found, New York law requires that the parties' intent to benefit a third party must be shown on the face of the agreement." *Newman & Schwartz v. Asplundh Tree Expert Co.*, 102 F.3d 660, 663 (2d Cir. 1996) (citation omitted); *e.g.*, *Amable v. New Sch.*, No. 20-CV-3811 (KMK), 2022 WL 1443352, at *4 (S.D.N.Y. May 6, 2022) (same).

Plaintiff fails to plausibly state a third-party beneficiary claim.  The amended complaint parrots the elements of the claim, stating that geographic restrictions in Aqua's contracts with

13

Ingram were "were intended to protect" plaintiff.  Am. Compl. ¶ 87; *see id.* at ¶¶ 86–88 (alleging that plaintiff "was an intended third-party beneficiary" of contracts between Ingram Export and Aqua); *see also* Opp'n 23 (claiming that plaintiff "is a third[-]party beneficiary to the contracts between Aqua and Ingram Export, including the Reseller Application").  But conclusory assertions like this do not suffice.  *See Kyszenia v. Ricoh USA, Inc.*, 583 F. Supp. 3d 350, 366 (E.D.N.Y. 2022) (collecting cases); *Dixon v. Ford Motor Co.*, No. 14-CV-6135 (JMA), 2015 WL 6437612, at *6 (E.D.N.Y. Sept. 30, 2015) (holding that "conclusory" allegation that certain warranties "were designed for and intended to benefit . . . consumers," including the plaintiff, was insufficient to state a plausible, third-party claim).

And plaintiff does not point to any contractual language establishing that Ingram and Aqua intended for plaintiff to be a beneficiary of any contract between Ingram and Aqua.  Far from suggesting an intent to benefit plaintiff, the language of the reseller application on which plaintiff relies undercuts that inference.  While the application required Aqua to identify countries where it would market or resell Ingram's products, it framed this inquiry as a matter of international "trade compliance," making no mention of Ingram's contractual relationship with plaintiff.  Am. Compl. Ex. D.  As for any contracts underlying the various alleged sales by Ingram to Aqua, *see id.* ¶¶ 56–63; *id.* Exs. E–K, the fact that each transaction dealt in plaintiff's products does not, without more, plausibly suggest that plaintiff is an intended third-party beneficiary of those contracts, *see Subaru Distribs. Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 126 (2d Cir. 2005) ("Contract language referring to third parties as necessary to assist the parties in their performance does not . . . show an intent to render performance for the third party's benefit.").

Moreover, contracts up and down a chain of distribution do not present the circumstances in which the nature of the duty performed under the contract supports inferring that third parties

are intended, rather than merely incidental, beneficiaries. *Compare Newman & Schwartz*, 102 F.3d at 661–63 ("[I]t is reasonable to assume that a provider of legal services is a third-party beneficiary of an agreement to pay for those services."), *and Amguard Ins. v. Getty Realty Corp.*, 147 F. Supp. 3d 212, 223 (S.D.N.Y. 2015) ("[I]t is reasonable to assume that the servient owner of a piece of property stands to benefit immediately from services performed to maintain a portion of that property." ), *with* Restatement (Second) of Contracts ("Restatement") § 302 cmt. e, illus. 17 (1981) ("B contracts with A to buy a new car manufactured by C. C is an incidental beneficiary, even though the promise can only be performed if money is paid to C."), *and In re McGraw-Hill Glob. Educ. Holdings LLC*, 909 F.3d 48, 60 (3d Cir. 2018) (applying New York law, quoting Restatement § 302 cmt. e, illus. 17, and holding that two photographers were not intended third-party beneficiaries of agreements even though they "benefit *directly* from the agreements").

Plaintiff's claim for breach of contract is therefore dismissed.

### III.     Plaintiff Fails to Adequately Plead a Conversion Claim.

Plaintiff asserts a conversion claim that covers both the CareTek and the Ingram Schemes, alleging that it "incurred damages" because of "Aqua's conversion of [Hewlett Packard] products." *See* Am. Compl. ¶¶ 89–92. But that claim does not plausibly allege plaintiff's right to possession at the time of the alleged conversion. Plaintiff's conversion claim is therefore dismissed under Rule 8.

In New York, "[t]he elements of . . . conversion are (1) plaintiff's possessory right or interest in the property and (2) defendant's dominion over the property or interference with it, in derogation of plaintiff's rights." *Advanced Oxygen Therapy Inc. v. Orthoserve Inc.*, 572 F. Supp. 3d 26, 37 (S.D.N.Y. 2021) (citing *Colavito v. N.Y. Organ Donor Network, Inc.*, 860 N.E.2d 713, 717 (N.Y. 2006)).

15

The amended complaint fails to set forth factual allegations that plausibly suggest plaintiff had the requisite possessory interest in the products it manufactured and then sold to its distributors at the time Aqua allegedly converted those products. Plaintiff's conclusory allegation that it "had the right to possession of the [] products . . . , including the right to sell those products on terms of its choosing," is inadequate. Am. Compl. ¶ 90; *see, e.g.*, *Bank of Am. Corp. v. Lemgruber*, 385 F. Supp. 2d 200, 222–23 (S.D.N.Y. 2005) ("Plaintiffs' conclusory allegation that they have 'a legal right and an immediate superior right of possession to assets currently being held by Defendant . . . ' is, without more, insufficient to survive a motion to dismiss." (citation omitted)).

The fact that plaintiff made the products at issue does not alone support a reasonable inference that plaintiff retained a possessory interest at the time Aqua allegedly converted those products. Per the amended complaint's description of plaintiff's "channel structure," sales to Aqua occurred after Ingram and CareTek had purchased the products from plaintiff, thereby acquiring plaintiff's possessory interest. *See* Am. Compl. ¶ 14; *see also* N.Y. U.C.C. Law § 2-403(1) ("A purchaser of goods acquires all title which his transferor had or had power to transfer."). And while plaintiff's contracts with Ingram and CareTek may have restricted to whom those entities could subsequently resell plaintiff's products, a conversion claim cannot depend on the breach of those contractual obligations alone. *Rynasko v. N.Y. Univ.*, 63 F.4th 186, 196 (2d Cir. 2023) ("A claim of conversion under New York law cannot be predicated on a mere breach of contract." (quotation marks and citation omitted)).

Plaintiff's conversion claim is therefore dismissed under Rule 8.

## IV. Plaintiff Fails to Adequately Plead a Negligent Misrepresentation Claim.

While plaintiff had previously represented that it "consents to dismissal without prejudice of its Fourth Cause of Action for Negligent Misrepresentation," Pre-Motion Conf. Ltr. 1 (Dkt. #21), plaintiff's amended complaint nonetheless contains a cause of action for negligent

misrepresentation against defendant Aqua, *see* Am, Compl. ¶¶ 79–85.  Plaintiff has once again offered to withdraw this claim without prejudice, *see* Opp'n 11 n.4, but defendants seek to dismiss it with prejudice, *see* Mem. in Supp. 17 n.1.  Plaintiff's negligent misrepresentation claim is both abandoned and meritless, so it is dismissed with prejudice.

To state a claim for negligent misrepresentation under New York law, a plaintiff must establish that "(1) the defendant had a duty, as a result of a special relationship, to give correct information; (2) the defendant made a false representation that he or she should have known was incorrect; (3) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the plaintiff reasonably relied on it to his or her detriment."  *Hydro Invs., Inc. v. Trafalgar Power Inc.*, 227 F.3d 8, 20 (2d Cir. 2000) (citing, among other authorities, *Int'l Prods. Co. v. Erie R.R. Co.,* 244 N.Y. 331, 338 (N.Y. 1927)).

When it comes to the duty prong, "New York strictly limits negligent misrepresentation claims to situations involving actual privity of contract between the parties or a relationship so close as to approach that of privity."  *In re Time Warner Inc. Sec. Litig.*, 9 F.3d 259, 271 (2d Cir. 1993) (quotation marks and citation omitted); *see J.A.O. Acquisition Corp. v. Stavitsky*, 8 N.Y.3d 144, 148 (N.Y. 2007) (requiring plaintiff to demonstrate "the existence of a special or privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff").  It is a stringent standard, which explains why "liability for negligent misrepresentation has been imposed only on those persons who possess unique or specialized expertise, or who are in a special position of confidence and trust with the injured party such that reliance on the negligent misrepresentation is justified."  *Kimmell v. Schaefer*, 89 N.Y.2d 257, 263 (N.Y. 1996).

17

Plaintiff's negligent misrepresentation claim fails because the amended complaint does not plausibly allege any sort of "special relationship" between plaintiff and Aqua. Plaintiff states that defendants "had a duty to provide correct information that was material to" their contracts with plaintiff. Am. Compl. ¶ 80. But this is the type of "naked assertion" that cannot support a claim "without some further factual enhancement." *Twombly*, 550 U.S. at 557. And the amended complaint contains no such factual enhancement. Instead, plaintiff alleges merely that Aqua "knew of" plaintiff's relationship with Caretek, Am. Compl. ¶ 80; "was aware that" plaintiff's "relationships with its partners and distributors regulated the sale of [plaintiff's products]," *ibid.*; and "knew that" its "representations regarding the need for Big Deal Program discounts would be and in fact were reasonably relied upon by" plaintiff, *ibid.* These allegations of knowledge do not suggest that there was "actual privity of contract between the parties or a relationship so close as to approach that of privity." *Time Warner*, 9 F.3d at 271. Nor do they indicate that Aqua possessed some sort of "unique or specialized expertise," or that Aqua was "in a special position of confidence and trust" with plaintiff. *Kimmell*, 89 N.Y.2d at 263; *cf. ibid.* ("Professionals, such as lawyers and engineers, by virtue of their training and expertise, may have special relationships of confidence and trust with their clients, and in certain situations we have imposed liability for negligent misrepresentation when they have failed to speak with care.").

Because the amended complaint does not plead facts supporting an inference that Aqua owed plaintiff a duty as a result of a special relationship, plaintiff's negligent misrepresentation claim is dismissed with prejudice.

## V.    Plaintiff May Replead Its Fraud Claim But Not Its Remaining Claims.

Plaintiff's three claims specific to the Ingram Scheme and its conversion claim are dismissed with prejudice, but plaintiff may seek leave to file an amended complaint containing its fraud claim. A court generally should grant leave to amend in the absence of "evidence of undue

18

delay, bad faith or dilatory motive on the part of the movant, undue prejudice to the opposing party, or futility." *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 283 (2d Cir. 2000).  Nevertheless, leave to amend "should be denied" if "repleading would be futile." *Goodrich v. Long Island Rail Rd. Co.*, 654 F.3d 190, 200 (2d Cir. 2011).  "When a plaintiff was aware 'of the deficiencies in his complaint when he first amended,' he 'clearly has no right to a second amendment even if the proposed second amended complaint in fact cures the defects of the first.'" *Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, 898 F.3d 243, 257–58 (2d Cir. 2018) (internal brackets omitted) (quoting *Denny v. Barber*, 576 F.2d 465, 471 (2d Cir. 1978)).  Applying these principles, all claims except for plaintiff's fraud claim are dismissed with prejudice and may not be repleaded. Plaintiff has already amended its complaint once after defendants gave notice of the grounds for their motion to dismiss those claims, *see* Ltr. Requesting Pre-Motion Conf., and plaintiff has not proposed any further amendments to cure the deficiencies in the amended complaint.  Plaintiff's fraud claim is also dismissed as inadequately pleaded.  But because plaintiff's first amended complaint was filed prior to notice of defendant's argument regarding failure to allege cognizable damages, *see ibid.*, plaintiff may file a motion seeking leave to file an amended complaint repleading its fraud claim within 30 days.

## CONCLUSION

Defendants' motion to dismiss is granted.  Plaintiff's claims for inducing breach of contract, intentional interference with prospective economic relations, breach of contract, negligent misrepresentation, and conversion are dismissed with prejudice.  Plaintiff may move for leave to file a second amended complaint that repleads its fraud claim within 30 days of this Order.

All further proceedings are stayed for 30 days.  If plaintiff fails to timely file such a motion, the

case will be closed and judgment will be entered.

   SO ORDERED.

          */s/ Rachel Kovner*
          RACHEL P. KOVNER
          United States District Judge

Dated: March 31, 2026
   Brooklyn, New York